State, ex rel. Van Wyck, *v.* Norris.     241

November Term, 1880.

---

CASE No. 1040.

STATE, *EX RELATIONE* VAN WYCK, v. NORRIS.

SAME v. SAME.

SAME v. SAME.

1. The genuine bank-book of a deceased commissioner in equity, regular in form, credited with deposits of more than sufficient to cover balance against him in his office, shows a due discharge of official duty, until the contrary appears.
2. The official moneys of a commissioner in equity being on deposit in a solvent Branch-bank of the State within one month after the adjournment of court, the law was sufficiently complied with, although the deposit was actually made before court opened.
3. In action upon the official bond of a deceased officer, the representatives and distributees of deceased sureties upon such bond sufficiently plead the

Q

statute of limitations in this form : " If ᛫any cause of action existed, it did not accrue within four years before the commencement of this action."

4. Where a mode of pleading is objectionable, the proper remedy is a motion to strike out as irrelevant.

5. Where a commissioner turned over his office, bank-book, &c., to his successor, claiming to withhold nothing, the statute of limitations then commenced to run in his favor against persons having funds in his hands, the provisions of the law which imposed upon him the duty of making a complete transfer, being equivalent to a demand.

6. A commissioner in equity in 1863 and 1864, deposited his official moneys in a Branch-bank of the State, where they remained until the failure of the bank at the close of the war. *Held*, that he was not liable for any of the money so lost.

7. A commissioner in equity, upon going out of office in 1866, reported balance due estates in hand to be a sum of money which was larger than the amount to his credit on his bank-book turned over, the excess being unaccounted for. After his death, and in 1874, action was brought against his administrator, and all his creditors were called in, who established claims less in the aggregate than the amount to his credit in the bank. *Held*, that it must be assumed that unpresented claims were satisfied, and that there was no unpaid balance against the commissioner, except what was covered by the deposit in the bank.

8. Demands against such officer for moneys received, but not charged against himself, for moneys credited, but no vouchers produced, and for bonds taken, but not turned over or accounted for, were barred by the statute of limitations, in four years from the termination of his office.

9. The statute would bar the claims of infant distributees who had general ᛫guardians, and who attained their majority more than four years before action brought, even where the funds were derived from the partition of real property.

10. The heirs of a deceased distributee, whose estate was represented by an executor, would also be barred.

11. Infants who attained their majority more than four years᛫ before action brought, are barred of their claim against the commissioner for moneys improperly received on bond payable to himself for personalty purchased at commissioner's sale.

12. The commissioner held a ᛫bond payable in installments for personal property really purchased by himself, the purchaser under the order of sale having the right to anticipate payments as far as necessary for the payment of debts, upon which bond he credited payments in 1863 and 1864, before due, and charged himself with the amounts received, after the debts of the estate were all paid. *Held*, that he thereby made himself liable for the confederate money so received in anticipation, at its value at the time of the payment.

13. Where there was no order to pay out the funds of an estate, the commissioner rendered himself liable at its then value for confederate money

credited on a bond, although not paid in fact, but included in a receipt given by the obligor for her share of the estate.

14. Where the statute of limitations is a bar to an action against an executor for a debt of his testator, it is equally a bar to an action against the heirs and distributees for the same demand.

Before PRESSLEY, J., Anderson, September, 1879.

In these cases, which were heard together, the Hon. Thomas B. Fraser, judge of the Third Judicial Circuit, sat in the place of Associate Justice McGowan, who had been of counsel in the court below.

They were three actions commenced June 29th, 1874, in the name of the State of South Carolina, *ex relatione* Lydia A. M. Van Wyck, Mary Maverick and eight others, against Isabella H. Norris and thirty-four other defendants. They were actions upon three official bonds of A. O. Norris, as commissioner in equity for Anderson district, bearing date December, 1853, December, 1857, and December, 1861, respectively. The plaintiffs were heirs-at-law of the estate of Samuel Maverick, deceased, and the defendants were the administrator of A. O. Norris, his distributees, and the administrators, heirs, devisees, &c., of the sureties on the three several bonds. All other creditors of A. O. Norris were called in and made parties by publication.

The case is fully stated in the opinion. There is no fact omitted which affects the points decided, except, perhaps, the statement that under the order for the sale of the property of the estate of P. S. Johnston, purchasers were allowed to anticipate payments on their bonds for so much as would be necessary to pay debts.

Exceptions to the referee's report are so full that they clearly indicate the points made by the parties to the cause. No exceptions having been taken to the Circuit decree (only notices of appeal), these exceptions cover the grounds argued in this court. They are as follows:

The plaintiff, in behalf of herself and the said other heirs-at-law of Samuel Maverick, deceased, excepts to the following conclusions of law found by the said William H. Parker, referee :

1. Because the referee erred in holding that the late Andrew O. Norris, commissioner in equity, had deposited the 'moneys received by him on account of the Maverick estate, in bank, according to law.

2. Because he erred in sustaining the defence of deposit, when he reports as a fact that said deposit was not sufficient to cover the balances in the hands of the said commissioner on account of all the estates, by the amount of $14,362.02, and it is no defence to say that the said deposit was sufficient to pay all the demands presented, or that the failure to deposit according to law occasioned no injury to any one.

3. Because the referee erred in holding that the statute of limitations was well pleaded in the answers of the several defendants, or in any of them, the plea in all the answers being hypothetical and insufficient.

4. Because the referee erred in holding that the statute of limitations is a bar to the recovery sought by the complainants of the moneys received by the said Andrew O. Norris, commissioner.

5. Because the commissioner is the ministerial officer or financial agent of the court, and not a technical trustee, whose liabilities are governed by rules inapplicable to such ministerial officer, and the referee erred in treating him as such trustee, and holding that his report on estates for 1866 was such act done in a public office by which he divested himself of his trust, with notice to the parties, as gave currency to the statute of limitations from that time.

6. Because such holding, in effect, makes the commissioner a technical trustee, and the referee has erred in applying to him the rules governing the liability of such trustees and contrary to the nature of the relation he sustains to moneys in his hands, as declared by law.

7. Because as to the $2512.50, claimed to have been paid to two of the Maverick heirs, and evidenced by receipts unsigned, the referee erred in holding that the said report on estates was such notice to the parties that the said commissioner held himself

not responsible for the same, as gave currency to the statute of limitations.

8. Because as to the sum of $1683.75, with which the said commissioner failed to charge himself, the referee erred in holding that the said report on estates was such notice to the parties that he claimed not to be charged therewith, as gave currency to the statute of limitations.

9. Because the referee erred in holding that the annual reports and accounts of the commissioner were conclusive of the rights of the parties whose estates or funds were accounted for.

10. Because the referee has erred in holding the commissioner to be a trustee in possession of money received for his *cestuis que trust,* and that the statute of limitations commenced to run from its receipt and the failure to pay over, and not from the time of the *demand.*

11. Because the referee erred in holding that a demand on the sheriff was necessary to constitute a breach of his bond and give currency to the statute, while the statute in the case of the commissioner runs from the time of the breaches, for if his holding that the commissioner is the agent of the court and parties be correct, then the statute cannot run in his favor as such agent, except from the time of the demand, notwithstanding there may have been previous breaches.

12. Because as to so much of plaintiffs' money as the late Andrew O. Norris failed to turn over to his successor, the referee erred in not holding that he held the same as the sheriff does, for the benefit of the parties entitled to it.

13. Because the statute of limitations can only run from the time of the demand of the parties *in interest,* and entitled to the money, and the referee therefore erred in holding that if a demand was necessary, it was made by act and operation of law, and by W. W. Humphreys, as successor of the said Andrew O. Norris, so as to give currency to the statute of limitations.

14. Because the referee erred in holding that the receipts of William Van Wyck, for himself and the other heirs, in March, 1861, were *prima facie* evidence of a demand of all moneys previously received and on hand at that time (which would, of course, include the balance of $10,212.49, reported at June Term, 1861,

as still on hand after such payments were made,) so as to give currency to the statute of limitations from that time.

15. Because the referee erred in holding, on the authority of *Vaughan* v. *Evans*, 1 *Hill's Ch.* 414, that the order to pay out was *prima facie* evidence of a demand, so as to give currency to the statute of limitations, that statute not being in question, and such holding being an application of the principle decided by it, never intended by the court, and for which it is not an authority.

16. Because the referee erred in not holding the minority of some of the Maverick heirs, a protection against the plea of the statute.

17. Because the referee erred in reference to the Strickland estate, in holding that the bond required of the administrator by the order of court to pay over to him the proceeds of the real estate, had been given when the proof was that no such bond was turned over by the said Andrew O. Norris to his successor, and no trace of it could be found in the offices of the Ordinary or commissioner, where it should have been recorded if it ever existed.

The defendants, Jesse W. Norris and others, except as to so much of the report of W. H. Parker, special referee herein, as finds in favor of the legatees of the estate of P. S. Johnston, deceased, (styled in said report heirs-at-law), viz., Mrs. Johnston, (now Cureton), Calhoun Johnston, W. C. Johnston, Mary Humphreys and Sallie L. Johnston, and G. W. Anderson, assignee of Calhoun Johnston, on the following grounds, to wit:

1. Because the several sums found in favor of the said legatees, and for the value of which, in United States currency, the defendants are required to account, were received by the late commissioner in equity in Confederate States treasury notes, in 1863 and 1864; were proceeds of sales made with reference to values in Confederate currency, in December, 1862, and March, 1863, respectively; by virtue of orders of sales, dated in November, 1862, and February, 1863; and were secured by bonds payable in installments, December 18th, 1863, 1864, 1865, as found by the referee; and from these facts he should have found

that these sums were lost to the estate of P. S. Johnston, by the subsequent loss of all value of the money in which they were paid, and not because they were paid before due, and it was error in him to find otherwise.

2. Because one of the said sums so found by the referee, to wit, $208.25, is part of a sum of $508.35, received by the commissioner on March 3d, 1863, on a purchase of $1320, was among the earliest of his receipts, was received by him under order of sale authorizing anticipation of payments for the payment of debts, and was so applied by the commissioner to the benefit and advantage of the estate, as shown by the account of the commissioner with said estate in evidence and not contradicted; and the referee should have so found.

3. Because, if not so applied, the said sum of $538.25 was received on a purchase of $1320, one-third of which and interest ($470.80) would have been due December 18th, 1863, and one-third and interest ($501.60) on December 18th, 1864; and the same loss would have resulted to the estate (in the loss of the currency) if this sum had been received when due, making this a case of *damnum absque injuria,* and the referee should have so decided.

4. Because, if not applied to the payment of debts and expenses, the said sum of $208.25, so found by the referee, having been received by the commissioner prior to his deposit in bank, was a part of such deposit and should have been included by the referee in the sum reported by him as deposited for this estate, there being no evidence to the contrary.

5. Because the $628.40, another sum allowed by the referee, was paid to the commissioner (as evidenced by his account) by Mrs. Georgia Ann Johnston, one of the legatees of this estate, (now Mrs. Cureton), who also received from the commissioner, on the same day, May 30th, 1864, as legatee, the sum of $1230.-08; she owed the commissioner for purchase at sale on December 18th, 1862, $569.75, which, with interest to May 30th, 1864, amounts to the sum with which she is credited, $628.46; the natural presumption is that she did not pay this sum, but received credit for it, and only received the difference in money, $691.54, and therefore that the $1230 covers the $628.46.

The disbursements of the commissioner were not questioned or gainsayed on the trial, and were not, therefore, involved. It was error in the referee not to find the facts as above stated, and to discharge the defendants from all liability to account for the same.

6. Because, as to the remaining sum of $544.26, received by the commissioner on August 6th, 1864, and adjudged to the said legatees by the referee, it was received in the exercise of a reasonable discretion reposed in the commissioner by the order of the court in a currency contemplated by the order, and there being no allegation or proof of waste, misappropriation or bad faith, the mere fact of receiving the sum before due subjects him and his sureties, at most, to liability to account only for the interest on the sum accruing up to the time of maturity of the bond, such being the measure of loss to the estate, and the referee should have so found.

7. Because it was error in the referee to decide that the legatees, Mrs. Cureton and her son, Calhoun Johnston, who came of age in 1870, more than four years before the commencement of this action, were not barred by the statute of limitations.

8. Because it was error in the referee to award interest on the sums allowed prior to the commencement of this action.

The Circuit decree was as follows:

This case involves so many parties in interest, and so many facts and points of law, that I have found it impossible to make any satisfactory condensation of the very full and able report herein, by William H. Parker, special referee.

After careful examination of said report and of the arguments and authorities by the attorneys in the case, I concur almost entirely in the result reached by the said referee. It is therefore ordered and adjudged that his said report be confirmed and made the judgment of this court, except so much thereof as concerns the estate of P. S. Johnston. As to that estate, it is my judgment that the statute of limitations bars the share of the widow by reason of her action not having been commenced within four years after settlement by A. Norris with his successor in office; further, that such of the minors are also barred as

came of age four years before the commencement of this suit, the burden of proof being upon them to show how long their disability continued.    Such of said minors as are not so barred, have leave to apply in this case for such order as may be necessary to enforce the payment of their claims out of the estate of A. O. Norris, or any of the sureties to his last bond.

It is further ordered that the plaintiffs in this case do pay the costs of the referee and of the officers of the court; that all other parties pay their own costs, except such of the minor heirs of P. S. Johnston as may recover under this judgment; they are to have the amounts due them, with costs.

Plaintiffs and defendants appealed.

*Messrs. Burt & Broyles,* for estates of Maverick and Strickland.

*Messrs. B. F. Whitner, J. N. Brown* and *E. B. Murray,* for defendants.

May 26th, 1881.    The opinion of the court was delivered by

FRASER, A. A. J.    These cases were heard together on the Circuit and in this court.    The facts will be found in the report of the referee, as modified by a statement of "facts additional" thereto, as agreed on by counsel and forming a part of the "case" before the court, and the testimony of W. W. Humphries, J. N. Brown, B. F. Crayton and Andrew O. Norris also in the "case."

It will not be necessary to re-state the facts, except so far as they explain the judgment of this court.

Andrew O. Norris, now deceased, was commissioner in equity for Anderson District for three successive terms of four years each, and entered into bond, with sureties for each term, for the faithful discharge of his duties.

1. The first bond was dated December 3d, 1853, with sureties James W. Harrison, Elijah Webb, J. E. Norris, Jesse W. Norris and E. S. Norris.

2. The second bond was dated December 3d, 1857, with sureties J. W. Harrison, Jesse W. Norris, J. E. Norris, Benjamin F. Sloan and Charles L. Gaillard.

3. The third bond was dated December 2d, 1861, with sureties Jesse W. Norris, E. S. Norris, Charles L. Gaillard, B. F. Sloan and James C. Keys.

The third and last term ended about January 3d, 1866, when Andrew O. Norris was succeeded in office by W. W. Humphries.

Andrew O. Norris, the commissioner, and all the sureties on these bonds died before the commencement of these actions, except J. W. Harrison and James C. Keys, who are insolvent, and have not been served with process.

The personal representatives, as well as the devisees, legatees, heirs and distributees of Andrew O. Norris and his sureties, who have died, have all been made parties to these proceedings.

These actions have been brought on these bonds in the name of the State of South Carolina, *ex relatione* Lydia A. Van Wyck and others, heirs-at-law of Samuel Maverick, deceased, on behalf of themselves and others, creditors of Andrew O. Norris, deceased; individually, and as commissioner in equity. The actions, in effect, are proceedings to marshal the assets of the estates of Andrew O. Norris and his deceased sureties on his official bonds, and for general relief.

Ida L. Featherstone, who had commenced an action on her own account on these bonds, was enjoined, but was afterwards permitted to proceed with an independent action.

All the issues of law and fact were referred to W. H. Parker, as special referee, and he was directed to call in, by publication, all the creditors of Andrew O. Norris, and to take an account of the administration of his estate, and, also, of the administration of the estates of the deceased sureties. The referee was also directed to take an account of the money received by Andrew O. Norris, as commissioner in equity, from sales made by him of the real estates of Samuel Maverick, and also of all moneys received by him as commissioner for others, and not accounted for.

The referee published the notice calling in creditors. Various claims against Andrew O. Norris, as commissioner, were presented, and some claims against him individually. The referee submitted his report, which, with some slight modifications, was confirmed by the Circuit judge.

As to several claims presented there has been no appeal. Only

three have been brought before this court by the appeal from the judgment of the Circuit Court.

1. The claim of the representatives of Samuel Maverick, deceased.

2. The claim of the representatives of Noel E. Strickland, deceased.

3. The claim of the representatives of P. S. Johnston, deceased.

There are claims against Andrew O. Norris, as commissioner in equity, for moneys received by him and not paid out, and for other defaults, as will hereafter appear.

| | | |
|---|---:|---:|
| The aggregate of the commissioner's balances for *all* estates in the office, as appears from his report in 1866, was the sum of...... ............ ...... | $90,695 | 65 |
| Deducting investments...... .......... .......... ......... | 12,420 | 63 |
| | $78,275 | 02 |
| Deposited in bank, as appears by bank-book...... | 63,913 | 00 |
| Leaving unaccounted for ..... .......... ...... ........ | $14,362 | 02 |

The report to June Term, 1866, states that the above sum of $12,420 was invested for several estates named in Confederate bonds, Confederate money and individual notes, and that the above sum of $63,913 was deposited in the branch of the Bank of the State of South Carolina, at Columbia, and was in full of all the balances on all other estates.

It does not appear from the report of the referee what items made up the $14,362.02, the amount unaccounted for.

The total amount of claims against the commissioner is stated in the report of the referee to be $34,980.35. It does not appear exactly how this sum is made up, but it is conceded that the total amount of the claims presented is far less than the amount deposited in bank. The deposit in bank does not profess to cover items of cash received and not charged against the commissioner in his account, or items claimed to have been paid out, and for which no proper receipt has been shown; or money collected after the date of the deposit in bank, or bonds not collected and not turned over to his successor by the commissioner.

These deposits in bank were made between October, 1863, and

February, 1864. No Court of Equity was held for Anderson District in 1862, 1863 or 1865. The court was held in June, 1864, and again in June, 1866. The reports to June Term, 1864 and 1866, showed the same balances, and that the sums admitted to be on hand had been deposited in bank.

The deposit was made by Andrew O. Norris in his official capacity as "A. O. Norris, Commissioner in Equity, Anderson District," in a genuine "bank-book of the Branch Bank of the state," and in the handwriting of the proper officer of the bank. This bank-book was turned over by Andrew O. Norris on or about January 3d, 1866, to W. W. Humphries, his successor in office, with an order for the payment of the money.

The fact that there is a large amount, $14,362.02, which has been received by the commissioner and not now accounted for, and the fact that there has been deposited in bank a much larger sum than is claimed by the parties now before the court, amounting to $28,932.02, cannot affect the rights of the parties now before the court. It will be time enough to consider these facts when other parties come forward who can show an interest in these amounts.

The claims now under consideration and above referred to, are:

I. The Maverick estate, consisting of—

1. Money collected and included in bank deposit, $25,760.30.

2. Money received on bonds and not charged in the account, $1683.75.

3. Amounts claimed by the commissioner in his account to have been paid out and the receipt not signed, $2512.50.

4. Balances due on bonds of J. C. Kennedy and Thomas M. Howard, not turned over to successor.

The bond of J. C. Kennedy has not been turned over, but the mortgage remains unsatisfied. The bond of Thomas M. Howard, in some way not explained, appears to have been assigned by the commissioner in equity for Greenville District, to Samuel M. Green and Laura R. H. Green, his wife, in part payment of the share of the latter in the estate of William Turpin, and to have been finally satisfied in April, 1867.

II. Estate of Noel F. Strickland, reported as on hand annually, from 1856 to 1866, $515.75.

At the June Term, 1853, there was an order to pay over this whole fund to Noel F. Strickland, and before payment he died. Administration on his estate was granted by the Ordinary to A. T. Broyles, but as the fund in court was the proceeds of the sale of real estate, an order was made June 26th, 1854, to pay over the whole fund to A. T. Broyles for the payment of debts on his entering into bond to the commissioner, with good security, in double the amount of the fund.

There is no record of such a bond in the commissioner's office, and if such bond has ever been given it cannot be found, and there is no evidence to show that, in fact, such a bond was given.

On February 16th, 1855, the commissioner paid to A. T. Broyles, out of this fund, which was originally $700, the sum of $184.25, leaving in his hands the above balance of $515.75, which has been reported as on hand annually from 1856 to 1866. This sum is reported in 1864 and 1866 as included in the deposit in bank.

This claim is presented by a petition filed by A. T. Broyles who had been appointed administrator of Noel F. Strickland, on behalf of the widow and children. There is no evidence that they or any of them are living, and, if living, they are non-residents. They were parties to the petition to pay over the fund to A. T. Broyles for the payment of debts of Noel F. Strickland. The children were all under twelve years of age March 25th, 1854, when that petition was filed.

III. Estate of P. S. Johnston.

The appeal in this case is on behalf of the representatives of Andrew O. Norris and his sureties.

This claim is as follows: Amount reported as on hand at the June Term, 1864, and at June Term, 1866, as deposited in bank, $7103.47.

Among the property sold by the commissioner and belonging to this estate was a slave, who was bid off by J. W. Harrison for $1320 on March 3d, 1863, and for which amount he gave his bond in three installments, payable December 18th, 1863,

1864 and 1865. This slave was bought by J. W. Harrison for the commissioner, and went into his possession, and he himself made the payments on the bond.

On March 3d, 1863, he credited the bond and charged himself with $538.25.

On December 18th, 1863, he credited the bond and charged himself with $304.05.

On August 6th, 1864, he credited the bond and charged himself with $544.26.

The report of the referee charges the estates of the commissioner and his sureties with the sum of $208.25 as the excess of the credit over what was due December 18th, 1863, with interest, and also with the sum of $544.26, the amount of last installment, credited before it was due, with the interest, and not deposited in bank—the first amount to be scaled at $1.90 to $1, and the second at $8.05 to $1.

The referee also charges the estates of the commissioner and his sureties with the sum of $628.46, received May 30th, 1864, on the bond of Mrs. Johnston, the widow, and paid out to her on the same day with other money, and her receipt taken therefor. Interest is also charged on this sum, and it is scaled at the rate of $9.47 to $1. The order under which the sale to J. W. Harrison was made, was dated February 13th, 1863, and the sale was made on March 2d, 1863.

These claims come under one or more of the following classes :

1. Money collected by the commissioner at various times during his three terms of office, and from time to time deposited n bank, and finally included in the deposit in the branch of the Bank of the State of South Carolina, at Columbia, as shown by he bank-book above referred to.

2. Money collected by the commissioner at various times during his three terms of office, and omitted in his account and unaccounted for.

3. Money collected on bonds charged in the commissioner's accounts as received and paid out, but the receipts for which have not been signed by the parties, and as to which payments there is no other evidence.

4. Certain bonds held by the commissioner and not turned over to the parties interested or to his successor.

5. Bonds collected in confederate money before due and deposited in bank.

6. Bonds collected in Confederate money before due and not deposited in bank.

The defences set up are—

I. The deposit in bank.

II. The statute of limitations.

To the plea of the statute it is replied that, if allowed at all, it cannot be applied to the claims of some of the parties who are under disability of minority. The facts in reference to the minority of some of the parties will be stated hereafter, in referring to the different estates involved.

I. As to the first defence—the deposit in bank—it is unnecessary to do more than to say that this court has held that a bank-book of the branch of the Bank of the State of South Carolina, regular in form, in the handwriting of the proper officer of the bank, containing an account with " A. O. Norris, Commissioner in Equity, Anderson District," showing a sum of money on deposit more than sufficient to cover the balance against the commissioner, must be assumed to show a due discharge of official duty until the contrary appears. *Featherston* v. *Norris,* 7 *S. C.* 484; *Same case,* 14 *S. C.* 624. The estates under consideration were specially named in the reports of 1864 and 1866, and the latter report claims that all the balances are covered by this deposit. The fact that there is a large balance unaccounted for cannot affect this case, because it must be assumed, for the purposes of this case, that those who have not brought forward their claims have been satisfied, and that there is, in fact, no such outstanding unpaid balance against the commissioner.

The amount deposited is $63,913, and the total of claims presented is $34,980.35, showing a balance " more than sufficient" to cover the claims of these estates, and all others brought into this case.

Neither does it impair the value of this deposit if it be admitted, as contended in the argument of these cases, that Confed-

erate money was deposited in bank. It was received on deposit as gold or bank bills would have been, and the same common catastrophe would have caused the same loss to, the parties interested in either case.

It is true that this money was not deposited within one month after the time for the adjournment of the Court of Equity for 1862 and 1863. Under some circumstances it might be important to inquire whether the commissioner was bound to deposit the money until the court had been *actually* held and had adjourned, so as to have the funds in his hands subject at once to the order of the court. The money was, however, deposited before the June Term, 1864, and was reported as being in bank. The commissioner might have made himself liable for a premature deposit if the bank had failed in the meantime. No good reason, however, appears why a deposit previously made and permitted to remain when the proper time arrived, is not, in all respects, just as good as if then made. All that would have been necessary would have been to make a new entry in the bankbook with a new date. So far as appears to the court the bank was then a safe depository of public and private funds, and only went down in the ruin which subsequently overtook public and private fortunes at the south.

II. As to the plea of the statute of limitations. A preliminary question has been made that the statute is pleaded " *hypothetically,*" and cannot, therefore, avail. It is in this form : " If any cause of action existed, it did not accrue within," &c.

A hypothetical *denial* is allowable only when the facts are not presumptively within the knowledge of the defendant, (2 *Wait's Pr.* 422), as in this case, where all the original parties are dead. A defence, however, may be thus pleaded " when a plain and direct statement cannot be given, and when this form is used from necessity and in good faith." An answer may deny that " a ditch was dug," and then say that *if dug*, it was sufficiently guarded, &c. 2 *Wait's Pr.* 309.

But if the mode of pleading is objectionable, the proper remedy is " a motion to strike out as irrelevant," &c. *Id.* There is no

good reason why the plea of the statute should not be governed by the same rules.

We will then proceed to consider the plea of the statute of limitations as applicable to these claims. "A statute of limitation," says Mr. Justice Story, "instead of being viewed in an unfavorable light as an unjust or discreditable defence, should have received such support from courts of justice as would have made it what it was intended emphatically to be—*a statute of repose.*" It supplies the defects of human memory, the loss of papers, and of witnesses who have removed beyond the jurisdiction of the court or who have died, and promotes promptness and punctuality in all business transactions.

The law is too well settled to make any reference to authority necessary, that when a trustee does an act which purports to be a termination of his trust, it gives currency to the statute from the time of such an act. This act may be simply an act done in a public office, in which, by law, he must render an account of his trust. When the act purports to be a complete termination of the trust he henceforth holds adversely, and, at the end of the statutory period, all further account is barred.

Trustees are not the only persons who are entitled to the benefit of the statute, and, therefore, it is not important to determine whether the commissioner in equity was or was not a trustee. He was, however, a public officer, to whom was entrusted, by law, the collection and custody of the money of others, and the care and custody of their bonds and other property.

In *Houseal* v. *Gibbes, Bail. Eq.* 484, the court uses this language : " The office of master of the Court of Equity is, in some respects, perfectly analogous to that of sheriff of the court of law. Both are receiving officers of their respective courts. The commissioner in equity was the receiving officer of the Court of Equity."

In *Wright* v. *Hamilton*, 2 *Bail.* 51, the doctrine is recognized that the statute will commence to run in favor of a sheriff from the demand ; and it is expressly held in *Williams & Clinton* v. *Sims*, 1 *Rich. Eq.* 53, that a claim against the sheriff will be barred after four years from demand. The sheriff was not

R

required to turn over money to his successor, and demand only could give currency to the statute.

The plea of the statute was not allowed to prevail in Houseal *v.* Gibbes, because the master held the fund under an order of the court requiring him to " improve on interest," or " invest in public securities." The court says : " Of course he cannot, in that point of view, plead the statute of limitations until he had previously divested himself of that trust by discharging it, or by denying all liability to discharge it further."

This is the same rule which is applied in the case of trustees. The general rule is that the statute begins to run from the accrual of the cause of action, and in cases of trustees and receiving officers the right of action commences from the demand and refusal, or from the act, which is a disavowal of the trust and the assumption of an adverse position.

If there should be a demand on the commissioner for the payment of money which he should pay out, and he refuses, the right of action accrues, and the sureties for the term are liable for the breach of the bond.

In *Vaughn* v. *Evans*, 1 *Hill's Ch.* 430, it is held that " an application for an order " to pay out or invest is such a demand. If it is such a demand as to make the sureties liable it is because it is a breach of the bond to neglect or refuse to do the duty, and the right of action accrues. From this time the statute ought to run if, as we hold, the commissioner in equity was such an officer as to be entitled to plead it.

The twenty-sixth section of the act of 1840 (11 *Stat.* 119), provides for a complete termination of the office of a commissioner in equity on the election and qualification of his successor, and the transfer to him of " moneys, bonds, notes, certificates of stock, and all other choses in action or property held by " him " by virtue of his office." He is authorized and required to demand from his successor a receipt for the property turned over, and he is declared to be liable for what he fails to turn over. The successor is required to give a receipt for the property turned over, if one is demanded of him, and if not required of him, it is his duty to make an " inventory " of such books,

State, ex rel. Van Wyck, *v.* Norris. 259

November Term, 1880.

bonds, &c., as have come into his possession, and file the same in the records of the court.

The outgoing and incoming commissioners are, by this section, both made liable for a neglect of the duty prescribed in it—to a rule for a contempt, to an action on the case, and to an action on the official bond. It is difficult to conceive any more sweeping or stringent provisions for the complete transfer to a successor of all property in charge of a commissioner at the termination of his term of office. After this he cannot answer to any one except his successor, and he cannot pass over his successor and pay or turn over to parties in interest. He must turn over to his successor. Under Section 16 " all moneys deposited in bank * * * or invested by him under any order or decree of the court in bonds, notes, stocks, or any property whatsoever, shall be transmissible to such successor in *trust* for parties interested."

This court concludes, from the testimony of W. W. Humphries, Norris' successor, that when Norris turned over his office on January 3d, with the bank-book above described, with an order for the payment of the money, he claimed to have turned over everything for which he was liable, as " Norris made no complaint that any of the papers were lost or that he was unable to turn them over."

If an order of the court can operate as a demand, certainly the provisions of Sections 16 and 26 must have that effect; and if the statute commences to run from the demand, it should commence to run from this statutory termination of the office and its duties. Parties under no disabilities had four years to investigate their rights, and there is no more reason for indulging them in long delay than others who have business relations with individuals or receiving officers of the courts.

Under the view taken by this court of these defences, we hold—

As to the Maverick estate:

The sum of $25,760.17 is sufficiently accounted for by the deposit in bank, and the sum of $2512.50, for which the receipt has not been signed, and the $1683.75, omitted items, and the bonds of

J. C. Kennedy and Thomas M. Howard, not turned over, are barred by the statute of limitations.

Samuel Thompson and Josephine Bryan having had guardians-in-chief, their claims are also barred by the statute. *Long* v. *Cason*, 4 *Rich. Eq.* 60 ; *Massey* v. *Massey*, 2 *Hill's Ch.* 496. And they attained majority more than four years before the commencement of these actions. The rule is that when an act is done during minority, which would give currency to the statute in case of an adult, the statute commences to run as soon as the minor comes of age.

S. A. Maverick and Joseph B. Weyman were two heirs-at-law of Samuel Maverick The former died in 1866 or 1867, and the latter some time before. Each left a will. The former appointed his wife, Mary, executrix, and his son, S. A. Maverick, executor, of his will. Joseph B. Weyman bequeathed his estate to his wife, Emala.

The interests of S. A. Maverick and Joseph B. Weyman passed under their wills to their personal representatives. There is no express authority in this state, so far as we can ascertain, that holds that the proceeds of land sold for partition is converted into personalty. It is certainly no longer subject to all the rules which govern real estate. The right of *dower* does not attach to it. There was no necessity that a married woman should convey it by a renunciation of her inheritance, as in case of land, before an officer. In *Hood* v. *Archer*, 2 *N. & McC.* 149, the court uses these words in reference to such money : " By legal operation converted into money." Where a will directs executors to sell the real estate and distribute the proceeds the land will be treated as personal property. The same rule applies to agreements for a sale for the purpose of division, and to a legislative direction for a sale. *Adams' Eq.* *136, note, and the authorities there cited.

The court holds that as to the shares of S. A. Maverick and Joseph B. Weyman, in the estate of Samuel Maverick, those who claim through them or under their wills are *barred*, by the operation of the statute, against their personal representatives.

As to the estate of Noel T. Strickland :

The whole fund was deposited in bank, and is sufficiently

accounted for. It is not important, therefore, to consider whether A. T. Broyles could not have received the fund under the appointment as administrator by the Ordinary, or whether he ever executed the bond to the commissioner as required by the order of the court.

As to the estate of P. S. Johnston, in which the appeal to this court is on behalf of the commissioner and his sureties:

The sum of $208.25, which the referee finds to have been received in excess of the first installment of the bond of J. W. Harrison, [we take the referee's statement, though it seems too small, as it has not been appealed from by the representatives of the Johnston estate], was received before it was due, and seems not to have been necessary, as an amount equal to the debts reported to be due, had already been paid in. It was, therefore, received without authority of law. The same is true as to the $544.26, the third installment received before it was due, and not deposited in bank. The amount of $628.46, received on the bond of Mrs. Johnston, May 30th, 1864, was in a transaction in which a receipt was given by her for $1230. If the large sum in bank was, as we hold, properly there, no fault could have been found with this transaction if there had been an order to pay out the money. But there was no such order to pay out, and it was a breach of duty in the commissioner to pay the money to her, even by way of discount. As to all three of these sums we find no fault with the scale adopted by the referee and applied to them. The claims of Mrs. Johnston and of Calhoun Johnston, who came of age in 1870, are barred by the statute of limitations.

The only default which is established by the judgment in these cases is as to a small portion of the estate of P. S. Johnston.

This estate was sold by the commissioner under orders of November 11th, 1860, July 8th, 1861, November 26th, 1862. The first sale was made December, 1862, and one sale was made in 1863.

John E. Norris was not a surety on the bond of 1861, and his estate is in no way liable for any default as to this estate. Benjamin F. Sloan and J. W. Norris were sureties on bond of 1861. Benjamin F. Sloan died February, 1867, and administration on his estate was granted in 1867, in March.

J. W. Norris died April, 1869, and administration on his estate was granted in June, 1869. As to any action against these administrators the statute is a bar. This is sufficient to protect the distributees. Any other rule would give creditors of any estate two periods of limitation—one against the personal representatives and one against the heirs, devisees, distributees and legatees. When the statutory period runs out the remedy is extinguished, and this should be an end of all litigation in reference to it. The minors, however, who are not barred as against the personal representatives, cannot, for the same reason, be barred of their rights as against the heirs, devisees, distributees and legatees of Benjamin F. Sloan and J. W. Norris.

The judgment of the Circuit Court is, therefore, affirmed, and the appeal dismissed.

SIMPSON, C. J., and McIVER, A. J., concurred.